MORRIS *v*. CITY OF FT. SMITH.

5-636                                                    276 S. W. 2d 36

Opinion delivered March 7, 1955.

*John E. Harris,* for appellant.

*Lem C. Bryan* and *Harry P. Daily,* for appellee.

GRIFFIN SMITH, Chief Justice. When W. C. Morris and others as plaintiffs stated in open court that they were not ready for trial their complaint was dismissed. The plaintiffs had asked for a continuance of thirty days for taking discovery depositions. As exhibits they filed copies of summonses commanding various witnesses to appear in the Sebastian county circuit court room November 15th, 1954.

The matter directly involved is validity of an election held Sept. 7th, 1954. Voters, by a small majority, approved issuance of $1,100,000 in bonds, proceeds to be used in extending and improving the Fort Smith Waterworks District.

Fort Smith operates under a commission form of government, authorized by Act 13 of 1913, Ark. Stat's, § 19-601 *et seq.* The mayor and two commissioners constitute the municipality's governing body. Section 9 of Act 13 invests the board of commissioners with all of the executive, legislative, and judicial powers and duties "now had, possessed, and exercised by the mayor, city council, board of public affairs, and all other officers and offices in cities of the first class." Executive and administrative authority and duties are distributed among five departments.

Under Amendment No. 13 to the Constitution the result of elections such as the one held Sept. 7th shall be declared by the mayor, and the proclamation shall be conclusive unless attacked in the courts within thirty days. By express language all provisions of Amendment 13 are to be treated as mandatory.

*First—Procedural Transactions.*—The complaint and answer, when read together as to matters not in controversy, show that in 1921 under authority of Act 336 of that year, the area embraced within Fort Smith was organized into a single district for water purposes, and that it acquired the existing system. For this pur-

pose, and in order to provide funds for enlargement, benefits were levied to secure a bond issue of $1,339,000. By 1935 the indebtedness had been reduced to $884,000. The difference of $455,000 was paid partly with tax money arising from the assessments and partly with moneys accruing from plant operations.

Faced with a rapidly decreasing supply from Poteau river whence the water came, and with contamination hazardous to health, the City of Fort Smith, the Water-works District, and the U. S. Public Works Administration pooled efforts, with the result that under authority of Ordinance No. 1682 the City constructed a dam on Clear Creek in Crawford county, impounding its waters and creating Lake Fort Smith. A filtration plant was built, and a 27-inch pipeline connected the lake with facilities of the Fort Smith Waterworks District. Revenue bonds payable exclusively from water sales were issued. The last of these bonds matured October 1, 1954, and they have been paid.

Appellants' complaint, among other things, alleges that the election held September 7th was discriminatory, and that it was unfair to real property owners "in that people with poll tax receipts could and were permitted to vote, even if they had no real or personal property, thereby imposing a tax lien to secure any bonds or other obligations sold by the defendants, *and* [this] *should lay a foundation for holding that the election was illegal and void.*"

It is further contended that with issuance of the bonds here questioned Van Buren, Alma, and Mountain-burg will continue to receive water in circumstances where enlargement of Fort Smith's source of supply would not be necessary but for discriminatory contracts; that the amount of water thus diverted is not surplus, and that the citizens of Fort Smith are being required to pay for accommodations alien to the plan accepted when Lake Fort Smith, the filtration plant, and the pipe-line were constructed. Such diversions, it is insisted, account for what is now termed the City's emergency,

the inference being that Van Buren, Alma, and Mountainburg are taking nearly half of the available supply of water.

Appellees answer this with statistics showing that for 1953 (the last full year covered by the records) the amount consumed by Mountainburg represented two-tenths of one percent of the total, that Alma followed with 4.6%, and Van Buren with 6.1%. This so-called diversion equaled 10.9% of the available supply; and, says the answer, no pipeline to, or a distributing system within, the three places was provided by Fort Smith or its waterworks district. The answer also alleged that rates charged the three municipalities were increased in 1950, presumptively because of a threatened shortage.

Prior to the controversy resulting in this appeal improvements were made under authority of Ordinance No. 2074, the estimated cost being $2,850,000. Revenue bonds were issued, but these are not general obligations of the city. Some of the work has not been completed.

Because of last year's emergency, and a water shortage that occurred during 1953, the City of Fort Smith met the issue through promulgation of Ordinance No. 2130. The ordinance particularized as to the improvements intended, but it is not included in the record here; nor is reference to it necessary to a determination of the disputed issues. This somewhat extended factual background is included for the purpose of presenting appellees' contention that the improvements are essential to the city's present needs and growth, and appellants' claim that something more than an election contest is involved.

*Second—Legal Issues.*—The proclamation issued by Mayor H. R. Hestand is dated Sept. 10, 1954. Appellants filed suit October 6th, with an amendment the following day. The answer is dated Oct. 14th. On October 15th the defendants asked the court to set the cause for early trial. Attention was called to the fact that bonds authorized by the election were advertised for sale October 29th. Plaintiffs' counsel was present during these

proceedings. Trial was set for Oct. 27th. At the court's direction the clerk (Oct. 16) reminded counsel for each side that the hearing had been docketed for nine o'clock on the 27th. A statement in the clerk's letter was that if for any legal reason either litigant could not be ready for trial the court's permission for a continuance should be procured before Oct. 22d.

Shortly after five o'clock the afternoon of the 22d appellant's counsel filed with the clerk an unverified motion for continuance. This motion was not presented until the court met the following morning. At that time counsel for appellants stated that he was not ready; and, although agreeing to facilitate the work, he apprehended that thirty days would be required. In the meantime there had been filed with the clerk notices to designated persons—some of whom were city officials—that discovery depositions would be taken November 15th.

From the court's action in overruling the motion for a continuance, and, as it is alleged, in arbitrarily dismissing the complaint, comes this appeal.

It cannot be argued that under the pleadings issues had not been joined. The answer did not contain a demand for setoff, nor was there a counter-claim, hence there could be no reply. Ark. Stat's, §§ 27-1131, 27-1123, and 27-1125. The dismissal occurred on the twenty-second day after service of summons.

While appellant insists that the proceeding is not an election contest, (and our action does not turn on that point alone) certain language in the motion for a continuance indicates that counsel treated it as such. The court had been requested to order issuance of subpoenaes, under Act 335 of 1953 (the discovery statute) directed to ". . . the judges and clerks of the box used in the election on whether or not the voters approved the building of an additional lake, located at the Economy Drug Store, on the 7th day of September, 1954; the judges and clerks of any other boxes in said election which plaintiffs desire to subpoenae, for the purpose of

discovery, relative to the allegations of plaintiffs' complaint as to the closing of the polls at 6 p. m., and for the discovery of whose direction said box or boxes were closed at 6 p. m., instead of 6:30 p. m., as the law requires.''

In discussing the issues with Circuit Court Judge J. Sam Wood in open court counsel failed to urge the phase now advanced in his brief: that the proceeding was not an election contest. The court repeatedly referred to the controversy as such a contest.

Where litigation affects the public welfare, and where authority under which this welfare is dealt with discloses a legislative or constitutional purpose that the matter at issue be expedited, trial courts are justified in advancing trial. One who challenges validity of a public transaction designed for speedy disposal assumes the burden of preparation and presentation within the time limited by law or reasonably fixed by the court. We do not believe that the general assembly, in enunciating the discovery statute, intended that it should be utilized as a means of delay. On the contrary, § 13 of Act 335 directs the courts ''. . . [to] dispose of such matters as expeditiously as possible to the end that matters of discovery shall not be unnecessarily delayed and that discovery shall not be used for dilatory purposes.''

There was no abuse of discretion, and the judgment is affirmed.